| | | |
|---|---|---|
| **ANTHONY PARKER,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| **CURTISS-WRIGHT CORPORATION,** | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the court on defendant Curtiss-Wright Corporation's ("Curtiss-Wright") Motion to Dismiss. Plaintiff Anthony Parker ("Parker") has filed a Motion to Strike Reply; however, the Reply was appropriately filed by Curtiss-Wright under the Local Civil Rules of this Court and properly addresses arguments and evidence Parker has asserted for the first time in his extensive Response. The Motion to Strike Reply will be denied and the Court will herein consider Curtiss-Wright's Motion to Dismiss, Parker's Response, and the Reply.

## FINDINGS AND CONCLUSIONS

### I.     Background

This is Parker's third civil action against an employer, or a purported employer, filed in 2017 in this Court. See 3:17-cv-00041-MOC-DCK (W.D.N.C.); 3:17-cv-00411-FDW-DCK (W.D.N.C.).

In a fourth action, which was *removed* to this Court, <u>Parker v. Owens</u>, 3:17-cv-720 (W.D.N.C.), Parker has already attempted to litigate the same termination complained of in this action. There, Parker named his supervisor as defendant, who, just like plaintiff, was employed by Metal Improvement Company, LLC ("MIC"). This Court dismissed that action as a claim against a supervisor is not viable under well settled law. <u>See</u> <u>Id.</u>, Order (#21). That determination is on appeal to the Court of Appeals for the Fourth Circuit.[1]

In response to the Complaint, Curtiss-Wright moved to dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure. Motion to Dismiss (#13). After the Motion to Dismiss was filed, a <u>Roseboro</u> Notice was entered by the Court. Order (#15). Parker timely filed a Response (#16) and Curtiss-Wright timely filed a Reply (#17). The Court has fully considered both the Complaint and Parker's Response (#16), which contains a Memorandum of Law (#16-1) and annexed materials, as well as an attachment (#16-2), which appears to a copy of defendant's supporting brief that has been marked up by plaintiff. The significance of that particular filing is not readily apparent.

For the reasons that follow, and after considering the Response and the Reply, the Court has determined that Parker has failed to state any actionable claim against Curtiss-Wright or, for that matter, his actual employer MIC.

---

[1] The Court notes that Parker also filed a fifth lawsuit in state court against the staffing company that employed the temporary employee who complained of harassment by Parker, whose allegations of sexual harassment apparently lead to the termination he complains of in this action. *See Anthony Parker v. Randstad North America, L.P.*, No. 17 CVD 22161 (N.C. Gen. Ct. of Justice, Mecklenburg County).

## II.     Discussion

### A.     Rule 12(b)(6) Standard

In determining whether a claim can survive a motion under Rule 12(b)(6), the Supreme Court held in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) that the "no set of facts" standard only describes the "breadth of opportunity to prove what an adequate complaint claims, not the minimum adequate pleading to govern a complaint's survival." <u>Id.</u> at 563. The Court specifically rejected use of the "no set of facts" standard because such standard would improperly allow a "wholly conclusory statement of claim" to "survive a motion to dismiss whenever the pleadings left open the possibility that a Parker might later establish some 'set of [undisclosed] facts' to support recovery." <u>Id.</u> at 561 (alteration in original). Post <u>Twombly</u>, to survive a Rule 12(b)(6) motion to dismiss, a claimant must allege facts in his complaint that "raise a right to relief above the speculative level." <u>Id.</u>, at 555.

> [A] Parker's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . .

<u>Id.</u> (second alteration in original; citation omitted). Further, a complaint will not survive Rule 12(b)(6) review where it contains "naked assertion[s] devoid of further factual enhancement." <u>Id.</u>, at 557. Instead, a claimant must plead sufficient facts to state a claim for relief that is "*plausible* on its face." <u>Id.</u> at 570 (emphasis added).

Post-<u>Twombly</u>, the Court revisited the Rule 12(b)(6) pleading standard in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009). In <u>Iqbal</u>, the Court determined that Rule 8 "demands more

than an unadorned, the defendant-unlawfully-harmed-me accusation." Id. at 678. The Court explained that, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" Id. (citing Twombly, supra; emphasis added). What is plausible is defined by the Court:

> [a] claim has facial plausibility when the Parker pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Id. This "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully." Id. Thus, a complaint falls short of the plausibility standard where a Parker pleads "facts that are 'merely consistent with' a defendant's liability ...." Id. While the court accepts plausible factual allegations made in a claim as true and considers those facts in the light most favorable to Parker in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP, 213 F. 3d 175, 180 (4th Cir. 2000).

In sum, when ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*) (citations omitted). A complaint "need only give the defendant fair notice of what the claim is and the grounds upon which it rests." Id., at 93 (alteration and internal quotation marks omitted). However, to survive a motion to dismiss, the complaint must "state[ ] a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950. To survive a motion to dismiss, a Parker need not demonstrate

that her right to relief is probable or that alternative explanations are less likely; rather, she must merely advance her claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570. If her explanation is plausible, her complaint survives a motion to dismiss under Rule 12(b)(6), regardless of whether there is a more plausible alternative explanation. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).

**B.    Considering the Pleadings of a *Pro Se* Litigant**

Courts must also be mindful of the fact that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972) (reversing dismissal of a *pro se* complaint since the court "cannot say with assurance that under the allegations of the pro se complaint . . . it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief") (internal citations and quotations omitted). That said, even a *pro se* complaint must plead "more than labels and conclusions." Giarratano, 521 F.3d at 304 n. 5; see also Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (holding that a *pro se* plaintiff must still "allege facts sufficient to state all the elements of [his] claim"). Finally, "district courts cannot act as the *pro se* plaintiff's advocate and cannot develop claims which the plaintiff failed to clearly raise on the face of [his] complaint." Douglas v. US Airways Group, Inc., 2011 U.S. Dist. LEXIS 49643, *8 (W.D.N.C. 2011) (citing Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978)).

## C.    Parker's Factual Contentions

In considering the Motion to Dismiss, the Court has taken the allegations of the Complaint as true.  The following summary is drawn from the Complaint.

Parker interviewed with Shawn Owens ("Owens"), a business unit manager for MIC for a Supervisor position in July 2017. Owens offered Parker the position of Shift Supervisor. MIC hired Parker, with Owens as his supervisor, on July 24, 2017. Complaint (# 1) at ¶¶ 15-18.  Parker was terminated from that employment on September 18, 2017. Id. at ¶38.

During Parker's first week on the job, Owens counseled Parker over his inability to operate a classifier machine. Id. at ¶ 19. Parker claims that on this occasion, just days after Owens interviewed Parker and offered him his job, Owens was threatening, abusive, demeaning, and confrontational. Id.

On August 26, 2017, Tonya Floyd ("Floyd"), a temporary contract worker assigned to the MIC facility, advised Parker of a workplace injury that occurred on August 23, 2017. Although this was not within his scope of responsibility, Parker took it upon himself to investigate Ms. Floyd's injury, gathering witness statements and writing up a summary of the incident before reporting Floyd's injury to Business Unit Manager Owens.  Id. at ¶ 20.

On August 27, 2017, Parker mishandled two shipments. When Owens spoke to Parker about these shipping mistakes, Parker blamed Owens and another coworker, and told Owens that he should only speak to him about production issues. Parker alleges Owens was loud, confrontational, insulting, and demeaning during this exchange.  Id. at ¶ 21.

Parker counseled an employee on August 10, 2017. Parker learned on August 31, 2017, that Owens was investigating that counseling session, focusing on comments Parker made about the Quality Department, and that Owens asked a black male coworker to provide a statement regarding Parker's comments. Parker alleges the coworker later resigned because Owens' request for a statement amounted to "ethnic intimidation." Id. at ¶¶ 23-24.

On August 31, 2017, Parker made a complaint to Curtiss-Wright's ethics hotline on "about [a] human resource[s] issue," alleging that Owens' investigation of his own conduct on August 10, 2017 was initiated "without Corporate HR approval," and that Owens' request for a statement from the black coworker amounted to "intimidation and harassment." Id. at ¶ 25.

On September 1, 2017, Parker made a second complaint to Curtiss-Wright's ethics hotline to criticize MIC's investigation of Floyd's injury on the basis that Owens had not asked Parker for statements. Id. at ¶¶ 26, 29.

On September 5, 2017, Parker made a third complaint to Curtiss-Wright's ethics hotline complaining of "being randomly picked for a drug test after making ethic [sic] complaint." Id. at ¶¶ 27-28.

On September 6, 2017, Parker spoke to MIC Senior Human Resources Generalist Gail Rideaux ("Rideaux"). Rideaux called to discuss Parker's complaints to the Curtiss-Wright ethics hotline and defended Owens's actions and advised Parker that MIC was conducting an investigation into Floyd's injury. Parker insisted that no such investigation

was possible without his involvement, and complained that Owens had neither asked for statements that Parker prepared nor asked Parker any questions. Rideaux also advised Parker that he should not lecture Owens on North Carolina employment laws, including the employment-at-will doctrine.  Id. at ¶¶ 29-32.

On September 7, 2017, Rideaux again spoke with Parker at 12:50 p.m. while Parker was working, to request that Parker turn in his company property, advising Parker that he was being suspended pending an investigation into his conduct. Id. at ¶ 33.

On September 9, 2017, Parker completed a "Charge Intake Form" alleging that MIC violated Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act ("ADEA").  Id. at ¶ 36, p. 15.  While Parker alleges that he filed an "EEOC complaint" on September 8, 2017, id. at ¶ 36, he actually only completed a Charge Intake Form, id. , p. 15, on September 9, 2017.  Such intake could not, as a matter of law, and did not, as a matter of fact, provide Curtiss-Wright (or MIC) with notice of a pending charge of discrimination.

On September 15, 2017, Rideaux again called Parker to request that Parker provide a statement in response to accusations made by a coworker that Parker had sexually harassed her. Parker emailed MIC a statement that he had not made any sexually harassing comments towards any of MIC's employees. Id. at ¶ 37.

On September 18, 2017, Parker was called and advised that his employment had been terminated. Id. at ¶ 38. MIC then sent Parker a letter of termination, which he received

on September 23, 2017, advising that he had been terminated for sexual harassment.  Id. at ¶ 44.

On September 27, 2017, the EEOC issued a Notice of Charge of Discrimination to MIC regarding the allegations made in Parker's Charge Intake Form.  Id. at p. 16. The EEOC issued Plaintiff a Dismissal and Notice of Rights on October 18, 2017. Id. at ¶ 41, p. 18. Plaintiff filed this lawsuit on October 30, 2017.

### D.      Parker's Claims and Causes of Action

Parker alleges in the Complaint that Owens engaged in abusive behavior and created a hostile environment towards employees of color, women, and persons over 40 years old and that complaints were made regarding Owens' behavior but MIC, "did not take any prompt remedial measures or take any corrective action." Id. at ¶¶ 43, 45, & 46. In this action, Parker asserts claims for: (1) racial discrimination in violation of Title VII; (2) age discrimination in violation of the ADEA; (3) retaliation in violation of Title VII; (4) a state law claim of wrongful termination in violation of the North Carolina Equal Employment Practices Act ("NCEEPA"); and (5) a state law claim of negligent retention and supervision.

### E.      Dismissal for Failure to State Plausible Claims

#### 1.      Title VII Claim

First, plaintiff has attempted to assert a Title VII claim, alleging that his termination resulted from racial discrimination.  Having read the Complaint in a light most favorable to plaintiff, it appears that he is attempting to assert a disparate discipline claim based on a

theory that Owens, his supervisor, also engaged in unspecified misconduct and was not terminated, whereas Parker engaged in sexual harassment of a female employee and was terminated. Id. at ¶¶ 43, 45, & 51-56. The allegations that are missing -- plausible allegations that Owens engaged in similar misconduct, to wit, sexual harassment of a coworker – are fatal to the Title VII claim.

To allege a prima facie case of race discrimination under Title VII, a plaintiff must plausibly allege "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd sub nom. Coleman v. Court of Appeals of Md., 132 S. Ct. 1327 (2012) (citing White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004)).  Turning to the fourth element, different treatment, the Complaint must contain plausible allegations of fact that could plausibly show that Owens engaged in conduct similar to plaintiff (sexual harassment of a coworker) and that Owens was less severely disciplined. Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir 1993).

Rather than allegations of plausible fact, Parker makes the following conclusory statements concerning his comparator, Owens: "Shawn Owens, had numerous internal complaint of abusive behavior toward employees of color, woman, and persons over 40 years old," that Owens had engaged in, "disrespecting and racial harassing and age discrimination and harassing female co-workers," and that, "Defendant has knowledge and Defendant has not disciplined." Complaint (#1) at ¶¶ 43 & 45. Under Twombly, these

-10-

conclusory allegations amount to nothing more than "labels and conclusions, and a formulaic recitation of the elements," and therefore are insufficient to survive a motion to dismiss. Twombly, 550 U.S. at 555.

Moreover, plaintiff is prohibited from using Owens as a comparator as he failed to first allege in his administrative charge that he was treated less favorably than Owens or, for that matter, by any other comparator.

> Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by a reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit.

Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996). Thus, this Court lacks jurisdiction over this claim as Parker failed to exhaust or commence his administrative remedy as to this claim. Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 (4th Cir. 2009) (holding that a plaintiff's failure to exhaust his administrative remedies on a Title VII claim will deprive federal courts of subject matter jurisdiction over the claim). This claim is, therefore dismissed, for lack of subject matter jurisdiction under Rule 12(b)(1).

### 2.    ADEA Claim

In his second cause of action, Parker next claims that his discharge was motivated due to his age and attempts to assert a claim under the Age Discrimination in Employment Act, ("ADEA"), 29 U.S.C. § 621, *et seq*. The ADEA makes it "unlawful for an employer ... to discharge any individual or otherwise discriminate against any individual…because

of such individual's age." 29 U.S.C. § 623(a)(1). To state a claim for age discrimination under the ADEA, Plaintiff must show that: (1) he is a member of the protected class; (2) he was qualified for the job and met MIC's legitimate expectations; (3) he was discharged despite his qualifications and performance; and (4) following his discharge, he was replaced by a substantially younger individual with comparable qualifications. Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 513 (4th Cir. 2006). Plaintiff must also allege plausible facts which, if later proved, could show that "age must be the 'but-for' cause of such treatment." EEOC v. Balt. Cty., 747 F.3d 267, 273 (4th Cir. 2014) (citing Gross v. FBL Fin. Servs., 557 U.S. 167, 177-78 (2009)).

Here, the allegations of the Complaint are fatal to being able to plausibly allege and later prove that age was the "but-for" cause of termination: plaintiff alleges that he was terminated because he sexually harassed a coworker. Complaint (#1) at ¶¶ 37, 38, & 44. Indeed, Parker has not alleged facts that would establish a prima facie case, other than as to first element as he alleges he was 59 years old. Id. at ¶ 59. As to the second through fourth elements, Parker does not allege that Owens and Rideaux are outside the protected class, that a younger person was hired to replace him, or any allegation concerning how his age came into play in any employment related decision.

Further, the allegations of the Complaint are not only lacking in plausible supporting allegations facts (as opposed to conclusory statements), they contain allegations that are antithetical to a claim of age discrimination. Causation may be established through temporal proximity, and the opposite is equally true. Dowe v. Total Action Against

-12-

Poverty, 145 F.3d 635, 657 (4th Cir. 1998); <u>Jensen v. W. Carolina Univ.</u>, No. 2:11CV33, 2012 WL 6728360, at *21 (W.D.N.C. Dec. 28, 2012), <u>aff'd</u>, 538 F. App'x 359 (4th Cir. 2013) (per curiam) (unpublished) (finding 11 month time lapse was too distant to support finding of causation). Here, Parker's claim that he was terminated due to his age is undermined not only by his acknowledgment that he was fired for sexually harassing a coworker, his allegations that Owens was motivated by age is not supported as it was Owens who hired plaintiff in July and recommended he be fired in September.

It appearing that parker has failed to allege plausible facts that could support establishing a prima facie case of age discrimination, the ADEA claim will be dismissed.

### 3.     Title VII Retaliation

To allege a prima facie claim of retaliation under Title VII, Parker must plausibly allege facts that could show: (1) that he engaged in a protected activity; (2) that his employer took an adverse employment action against him; and (3) that there was a causal link between the two events." <u>DeMasters v. Carilion Clinic</u>, 796 F.3d 409, 416 (4th Cir. 2015). A "protected activity involves opposing, or participating in a grievance proceeding concerning, employment practices made unlawful by Title VII or the ADEA" <u>Ray v. Amelia Cty. Sheriff's Office</u>, 302 F. App'x 209, 213 (4th Cir. 2008). To show the causal link required in the third element, a plaintiff must allege plausible facts that could show that the "protected activity was a but-for cause of the alleged adverse action." <u>University of Tx Sw Med. Ctr v. Nassar</u>, 133 S. Ct. 2517, 2534 (2013).

First, plaintiff has not and cannot allege plausible facts that would show his employer, MIC, had notice that he was engaging in protected activity at the time he was terminated. The facts as alleged by Parker, and as established in the documents he has provided, shows that MIC was not aware of his EEOC charge or the preliminary steps taken with the Commission until nine days _after_ MIC terminated his employment. As discussed above, plaintiff only completed an intake form with the Commission on September 9, 2017, the "Notice of Charge of Discrimination" that the EEOC provided to MIC and that Plaintiff attached to the Complaint is dated September 27, 2017, making September 27, 2017 the earliest possible date that the EEOC could have given MIC notice of Plaintiff's Charge of Discrimination. Complaint (#1), at p. 16.

Second, Parker is also unable to allege plausible facts that could support a Title VII retaliation claim as it is not possible to establish retaliation for engaging in protected activity where plaintiff acknowledges, as he has here, that he was fired for sexually harassing another employee. Complaint (#1) at ¶¶ 37, 38, & 44.

Third, the Court has searched the record for other protected activity and can find none. His complaints to the Curtiss-Wright ethics hotline, detailed above, are not protected activity as they did not concern "employment practices made unlawful by Title VII or the ADEA." _Amelia Cty. Sheriff's Office_, 302 F. App'x at 213. Specifically, Parker asserts that he used the corporate hotline to complain that: (1) Owens, without "Corporate HR approval," was investigating comments that he made and asked a witness, who is black, to provide a statement regarding Plaintiff's conduct, Complaint (#1) at ¶ 25; (2) MIC was not

adequately investigating an accident that was reported on August 26, 2017 because Owens did not request a statement from him, id. at ¶¶ 26 & 29; and (3) Parker had been randomly selected for a drug test screening. Id. at ¶ 28.

Parker has not plausibly alleged facts that could support a Title VII retaliation claim and this cause of action will be dismissed.

### 4.    Supplemental Claim for Wrongful Discharge under NCEEPA

Next, Parker asserts a state law claim of wrongful termination in violation of the North Carolina Equal Employment Practices Act ("NCEEPA"), N.C. Gen. Stat. § 143-422.2, based on race. The NCEEPA prohibits discrimination as against public policy, providing:

> [I]t is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees.

Id.   To state a claim for wrongful discharge in violation of North Carolina public policy, a plaintiff must plead plausible facts that, if later proved, would show that his dismissal occurred for a reason that violates public policy. Imes v. City of Asheville, 163 N.C. App. 668, 670 (2004).  Thus, Parker's burden was to plead plausible facts that his employment was terminated "on account of [his] race." N.C.Gen.Stat. § 143-422.2.

Wrongful discharge claims brought under NCEEPA are subject to the same evidentiary standards as Title VII.  Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995). Thus, Parker's NCEEPA claim fails for the same reasons his Title VII claim failed.  In his

Complaint, Parker does not allege a single fact which, if later proved, could show that Owens or any other comparator outside his protected class engaged in similar conduct but was treated less severely than he was, or that MIC terminated Plaintiff's employment "on account of" his race (and not for sexually harassing a coworker). Thus, the NCEEPA claim fails to "raise a right to relief above the speculative level," which requires dismissal. Aziz, 658 F.3d at 391 (quoting Twombly, 550 U.S. at 555). For these reasons and for those discussed above as to Parker's Title VII claim in the context of Rule 12(b)(6), this claim will be dismissed.[2]

To the extent Parker is attempting to bring a NCEEPA claim based on a claim of retaliation, mirroring his federal claim discussed above, the federal courts have consistently rejected the existence of any such claim. Johnson v. North Carolina, 905 F.Supp.2d 712, 725 (W.D.N.C. 2012) (collecting cases). Under the prevailing law of the Fourth Circuit, "there is no private right of action under North Carolina law for retaliation under § 143-422.2." McLean v. Patten Cmtys., Inc., 332 F.3d 714, 719 (4th Cir. 2003). Thus, Parker fails to state a NCEEPA claim for retaliation as a matter of law and that claim will also be dismissed.

### 5. Supplemental Common Law Claim for Negligent Retention and Supervision

Finally, Parker has attempted to assert a state law claim for negligent retention and supervision. To allege a claim for negligent supervision or retention, plaintiff must allege

---

2       The Court notes that the dismissal of the NCEEPA claim is not based on Rule 12(b)(1) as the administrative exhaustion claims under federal law are not applicable to the analogue state claim.

plausible facts which, if later proved, could show that: (1) an incompetent employee committed a tortious act resulting in injury to the plaintiff; and (2) prior to the act, the employer knew or had reason to know of the employee's incompetency. <u>Smith v. First Union Nat'l Bank</u>, 202 F.3d 234, 249-50 (4th Cir. 2000).

Parker has failed to allege that an employee committed a tortious act that is cognizable under the common law of North Carolina as he has contended that the underlying tort was "violation of Plaintiffs federally protected rights." Complaint (#1) at ¶ ¶ 80 & 81. Only a common law tort can support a negligent retention or supervision claim under North Carolina law, making the alleged violation of his Title VII and ADEA rights insufficient to support this claim. <u>Jackson v. FKI Logistex</u>, 608 F. Supp. 2d 705, 708 (E.D.N.C. 2009). Even if this contention was reinterpreted to allege the NCEEPA wrongful termination claim as the underlying tort, the negligent retention and supervision claim would again fail because, for the reasons discussed above, plaintiff has failed to viably state even that claim. Where there is no viable underlying tort, a plaintiff cannot state a negligent retention or supervision claim. <u>Hartsell v. Duplex Prods.</u>, 123 F.3d 766, 774 (4th Cir. 1997). Plaintiff's negligent retention or supervision claim fails to state a claim upon which relief can be granted.

## F. Dismissal for Failure to Name the Actual Employer and Dismissal with Prejudice

Curtiss-Wright has also moved to dismiss the Complaint as it was not Parker's employer. Standing to invoke the subject matter jurisdiction of this Court requires that a

plaintiff bring an action that satisfies the "case-or-controversy limitation on judicial authority found in Article III, Section 2 of the Constitution," which requires showing that the alleged wrong or injury is "fairly traceable to the defendant['s] actions." Long Term Care Partners, LLC v. United States, 516 F.3d 225, 231 (4th Cir. 2008). Here, it is undisputed that during Parker's brief employment, he was employed not by the Curtiss-Wright Corporation, but by MIC, which is indisputably a subsidiary of Curtiss-Wright Surface Technologies, which is in turn a subsidiary of Curtiss-Wright Corporation.

While this Court has allowed plaintiffs leave to amend pleadings to allege the correct employer, see Wright v. N.C. Dep't of Corr., 3:11CV341-RJC (W.D.N.C. 2011), leave to amend should only be granted where such amendment would not be futile. Here, even if the Court allowed amendment to name the correct defendant-employer, MIC, the Complaint would still suffer the same ailments discussed above. No amount of reworking will cure the underlying ailment, which appears to be the plain and simple causal nexus between his employer's conclusion that he sexually harassed another employee and his termination. Indeed, the additional materials and arguments Parker submitted in his Response simply reinforce the existence of the causal nexus as they show his suspension came the same day the allegation was made and verified by MIC, Response (#16-1) at pp. 5-6, and that the termination of employment letter specified that his termination was based on an investigation of the sexual harassment claim, which turned up eyewitnesses to Parker's sexual harassment of the female employee. Id. at p. 50. Further, the Response adds nothing to his contention that he was terminated because he engaged in protected

activity under Title VII or the ADEA. In addition, interviewing African-American employees as part of an investigation concerning an African-American employee is not evidence of "ethnic intimidation" as it is readily apparent that fellow workers were interviewed not based on race, but on whether they witnessed misconduct in the work place. The fact that plaintiff was subjected to a random drug test, id. at 5, also carries no water inasmuch as Parker's only argument is that such requirement was retaliation for his correcting Owens' errors, not in engaging in protected activity under Title VII or the ADEA.

On his ADEA claim, plaintiff switched horses in response to the Motion to Dismiss, now contending without the benefit of amendment that it was Owens and not Rideaux who investigated plaintiff's ethic hotline complaints and the claims of sexual harassment. While this change has apparently been inspired by Parker's realization that Rideaux works in Texas, the changed allegations make no substantive difference. Likewise, Parker's new allegation that Owens fired the previous supervisor because he was also in the protected age group adds nothing to his ADEA claim. Indeed, Parker's conclusory allegation has no basis in logic as it is nonsensical to allege that Owens terminated its former supervisor because he was too old, and then immediately hired Plaintiff, who is the same age, in order to "cover[] up the past termination." Response (#16-1) at p. 12.

Finally, it appears that such dismissal should be with prejudice. A "dismissal without prejudice invites … an amendment." Goode v. Central Virginia Legal Aid Society, Inc., __ F.3d ___, No. 14-1939, at p. 16 (4th Cir. Dec. 9, 2015). Despite filing a series of

actions, plaintiff has been unable to shift responsibility for his termination to anyone other than himself.  Indeed, if defendant's description of the state court action is correct, it appears that Parker is now going after the temp agency that hired his accuser. To allow plaintiff another bite at the apple in these circumstances would not only be the exercise in futility Courts caution against, see Scott v. Family Dollar Stores, Inc., 733 F.3d 105, 121 (4th Cir. 2013), it would interfere with the sound administration of justice as plaintiff's filings in this Court have run dangerously close to being frivolous and vexatious. Put another way allowing amendment at this point would invite plaintiff to cross that line with no readily apparent benefit, but which could have serious consequences for his access to this Court in the future.

While the Court will not allow amendment to allege the correct defendant, the Court has reserved this issue to the end of the discussion so that each of his claims could be given through consideration.  Clearly, MIC has had notice of this action through its corporate parent or grandparent and has well-argued its position.  At this point, the Court is satisfied that plaintiff has exhausted his claims concerning this termination of employment.   The dismissal of this action will, therefore, be with prejudice.


**ORDER**

**IT IS, THEREFORE, ORDERED** that Anthony Parker's Motion to Strike Reply (#18) is **DENIED**, defendant Curtis Wright Corporation's ("Curtis Wright") Motion to

Dismiss is **GRANTED**, and this action is **DISMISSED** with prejudice for the reasons discussed above.

The Clerk of Court is instructed to enter Judgment consistent with this Order.

Signed: April 4, 2018

Max O. Cogburn Jr
United States District Judge